**UNITED STATES FEDERAL COURT FOR THE**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

| | |
|---|---|
| ASHLEY WORLINE, an individual, | CASE NO. 1:25-cv-20156 |
| *Plaintiff*, | |
| vs. | |
| MOTHERSHIP TRANSPORTS CORPORATION, a Florida corporation, and ILYSE T. SHUSTER-FROHMAN, an individual, | |
| *Defendants*. | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Ashley Worline, through undersigned counsel, files this Complaint and Demand for Jury Trial against Defendants Mothership Transports Corporation ("Mothership") and Ilyse T. Shuster-Frohman ("Frohman") (collectively, "Defendants"), and states:

1. This is an action for damages caused by Defendants' willful and continuous violations of the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et. seq. ("FLSA"), the Florida Minimum Wage Act ("FMWA"), and Florida common law.

## JURISDICTION AND VENUE

2. This Court has subject matter judication with respect to Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

3. This Court has pendant jurisdiction over the FMWA and state law claims pursuant to 28 U.S.C. § 1367 because Plaintiff's state law claims are so closely related to the FLSA claims that they form part of the same case or controversy under Article III of the United States Constitution.

4. Venue is proper in the Southern District of Florida because Plaintiff was employed by Defendants in this District; because Defendants, at all material times, conducted and continue to conduct business in this District; because the acts that give rise to Plaintiff's claims occurred within this District; pursuant to 28 U.S.C. §§ 1391(b) and (c); and because Defendants are subject to personal jurisdiction herein.

5. All conditions precedent to this action have been performed or waived.

**<u>PARTIES</u>**

6. Plaintiff is a resident of Palm Beach County, Florida. At all times material, Ms. Worline was Defendants' employee within the meaning of 29 U.S.C. § 203(e).

7. Defendant Mothership is a Florida corporation with its principal address at 1000 5th Street, Suite 200, Miami Beach, FL 33139, that, at all times material, has continually done business in the state of Florida.

8. Mothership provides an online platform and service that functions as a marketplace for businesses to hire and manage freelancers and service providers. Motherships employees, including Ms. Worline, regularly engaged in interstate commerce and produced goods for commerce through developing and managing relationships with Mothership's domestic and international service providers, maintaining Mothership's platform, executing multi-state marketing and sales initiatives, overseeing Mothership's daily operations, and managing Mothership's international team.

9. At all times material, Mothership was an "enterprise engaged in commerce" within the meaning of 29 U.S.C. § 203 and has had two (2) or more employees who have regularly sold, handled, or otherwise worked on goods and/or materials that have been moved in or produced for commerce.

10.     Upon information and belief, Mothership has gross revenue in excess of $500,000.00 per annum for the relevant time period and utilizes goods in the flow of commerce across state lines. Mothership is therefore covered as an "enterprise" as defined by the FLSA, 29 U.S.C. § 203(s).

11.     Defendant Frohman is an individual who resides in and who conducts business in Broward County, Florida, including the business that is the subject of this complaint.

12.     Defendant Frohman is the owner, CEO, President, and operator of Mothership. In these roles, Frohman had, at all times material, operational control over significant aspects of Mothership's day-to-day functions, including the compensation and scheduling of employees, and she had direct responsibility for the supervision of employees, including Plaintiff. Frohman is personally liable for the FLSA violations complained of herein. Frohman is an employer within the meaning of 29 U.S.C. § 203(d).

13.     At all times material, Defendants maintained control, oversight, and direction over Ms. Worline in her capacity as an employee, including but not limited to hiring and firing decisions, determining the rate of pay and work schedules, maintaining employment records, and otherwise controlling the terms and conditions of her employment.

14.     At all times material, Defendants had control over and the power to change compensation practices that harmed Ms. Worline and the other individuals that it employed.

### GENERAL ALLEGATIONS

15.     Plaintiff was a non-exempt employee of Defendants and was subject to the payroll practices and procedures set forth hereinafter.

16.     Ms. Worline was initially employed by Defendants in a full-time role as an Operations and Marketing Coordinator from May 2022 through February 2023.

17. Ms. Worline's duties were tightly managed by the Defendants and included developing and managing relationships with Mothership's service providers, executing marketing and sales initiatives, and working closely with Frohman in overseeing Mothership's daily operations and managing its international team.

18. In August 2023, Ms. Worline was rehired by Mothership as a part-time employee. She worked until her resignation effective July 5, 2024. Defendants agreed to pay Ms. Worline at an hourly rate of $40.00 per hour.

19. During this second stint of employment, Ms. Worline's duties were functionally equivalent to her duties as a full-time employee, and also included social media content creation and posting, podcast editing, marketing campaigns, administrative tasks and scheduling, coordinating luxury travel arrangements for Frohman, and sales prospecting.

20. During this second stint of employment, Mothership paid Plaintiff her salary as if she were an independent contractor, despite the reality that she was performing the same role she performed as a full-time employee. At all times material, Plaintiff had no control over Defendants' payroll practices and was forced to accept payment under these circumstances.

21. Defendants dictated Ms. Worline's tasks and schedule, and controlled the economic aspects of the working relationship, including Ms. Worline's rate of pay and the method of paying her wages.

22. Ms. Worline's role and duties were critical, necessary, and central to Mothership's principal business. Ms. Worline was held out to third parties by Defendants as an integral part of Mothership's business team. Frohman often referred to Ms. Worline as her "right and left hand" and proclaimed that Ms. Worline "keeps the 'ship' moving."

23. Ms. Worline was given a Mothership email address, phone number, and access to Mothership's software, systems, and accounts in order to perform her duties. Ms. Worline worked out of Mothership's offices 2-3 days per week.

24. Ms. Worline's role was continuous and did not have a fixed end date. In fact, in May 2024, Mothership offered Ms. Worline a larger role, commissions for business that she generated, and an opportunity to earn equity in the business via a long term vesting schedule.

25. At the direction of Defendants, Ms. Worline was required to submit to Frohman, and did submit, detailed timesheets specifying hours worked and work performed. Due to the detail required by Defendants, it often took Ms. Worline 1-2 hours of uncompensated time to put together her timesheet reports.

26. In response, it was Defendants' policy and procedure to approve Ms. Worline's time sheet and pay her wages.

27. Between April 19, 2024, and July 5, 2024, Ms. Worline worked 138.5 hours for which she was not paid the applicable statutory minimum wage or any wages at all.

28. At times, Ms. Worline was required to incur expenses on behalf of Defendants with the expectation and promise that she would be reimbursed.

29. Defendants failed to reimburse Ms. Worline for approved expenses incurred on behalf of Defendants in the aggregate amount of $679.10. These unpaid expenses include equipment, supplies, postage, meals, parking, tolls, and mileage.

30. On or about May 3, 2024, Mothership agreed to pay Ms. Worline a commission of 2-4% of the gross revenue won by Mothership as a result of Ms. Worline's sales efforts and lead generation.

31. Between May and June 2024, Ms. Worline's efforts resulted in Mothership winning the business of several clients, resulting in hundreds of thousands of dollars in revenue. Ms. Worline was not paid any commissions, which remain due and owing.

32. The refusal to pay Ms. Worline her earned wages was an intentional decision by the Defendants. Notably, during this time period, Frohman used Mothership to finance a life of luxury and otherwise improve her lifestyle with the income generated by Mothership while failing to pay wages to the people that made it all possible.

33. Defendants knowingly misclassified Plaintiff as an independent contractor to avoid paying her employment benefits and paying employment taxes.

34. Defendants' unlawful conduct was pursuant to a corporate policy and practice that included minimizing labor costs and maximizing profits.

35. Defendants' unlawful conduct has been widespread, repeated, and consistent.

36. Defendants' unlawful conduct has been intentional, willful, and in bad faith, and has caused damages to Ms. Worline.

## COUNT I – VIOLATIONS OF THE FLSA
## (UNPAID MINIMUM WAGES – BOTH DEFENDANTS)

37. Plaintiff repeats and realleges the allegations in paragraphs 1 through 36, as if fully set forth herein.

38. During the course of Plaintiff's employment with Defendants, she was to be compensated at an hourly rate of $40.00 per hour.

39. Between April 19, 2024, to July 5, 2024, Ms. Worline worked 138.5 hours and was not paid anything.

40. During the course of Ms. Worline's employment, Defendants required her to submit detailed timesheet reports that took 1-2 hours of uncompensated time to complete.

41. Defendants willfully violated 29 U.S.C. § 206 by failing to compensate Ms. Worline at a rate equal to the federal minimum wage for work performed while Defendants employed Plaintiff during the relevant time period.

42. Defendants' minimum wage violations of the FLSA were willful and intentional. Defendants were aware or should have been aware that their practices with regard to the compensation of Ms. Worline violated the FLSA. Defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiff.

43. As a direct and proximate result of Defendants' willful violation of federal laws, Ms. Worline has suffered damages, including unpaid wages, liquidated damages, and the costs and fees associated with this action.

WHEREFORE, Plaintiff respectfully seeks the following relief against Defendants:

a. Damages in an amount to be determined for all unpaid minimum wages;

b. Back pay;

c. Liquidated damages pursuant to 29 U.S.C. § 2617(a)(1)(A)(iii);

d. Plaintiff's reasonable attorneys' fees and costs and expenses of this litigation pursuant to 29 U.S.C. § 216(b);

e. Interest on the amount found due;

f. Such other relief as this Court shall deem just and proper.

### COUNT II - VIOLATIONS OF THE FMWA
### (UNPAID MINIMUM WAGES – MOTHERSHIP)

44. Plaintiff repeats and realleges the allegations in paragraphs 1 through 36, as if fully set forth herein.

45. This action is brought under Section 448.110, Florida Statutes.

46. During the course of Plaintiff's employment with Mothership, she was to be compensated at an hourly rate of $40.00 per hour.

47. Between April 19, 2024, to July 5, 2024, Ms. Worline worked 138.5 hours and was not paid anything.

48. Mothership violated the FMWA by failing to compensate Ms. Worline at a rate equal to the required minimum wage in Florida for work performed while Mothership employed Plaintiff during the relevant time period.

49. As a direct and proximate result of Defendants' willful violation of the FMWA, Ms. Worline has suffered damages, including unpaid wages, liquidated damages, and the costs and fees associated with this action.

WHEREFORE, Plaintiff respectfully seeks the following relief against Defendants:

a. Damages in an amount to be determined for all unpaid minimum wages;

b. Back pay;

c. Liquidated damages pursuant to Fla. Stat. § 448.110(6)(c)(1);

d. Plaintiff's reasonable attorneys' fees and costs and expenses of this litigation pursuant to Fla. Stat. § 448.110(6)(c);

e. Interest on the amount found due;

f. Such other relief as this Court shall deem just and proper.

<u>**COUNT III – UNPAID WAGES**</u>
<u>**(AS TO MOTHERSHIP)**</u>

50. Plaintiff repeats and realleges the allegations in paragraphs 1 through 36 as if fully set forth herein.

51. Plaintiff was promised a base hourly rate of $40.00 per hour.

52.     From April 19, 2024, to July 5, 2024, Ms. Worline worked 138.5 hours and was not paid anything.

53.     Mothership approved the timesheets submitted by Ms. Worline and hours worked by Ms. Worline from April 19, 2024, to July 5, 2024.

54.     On or about May 3, 2024, Mothership agreed to pay Ms. Worline a commission of 2-4% of the gross revenue won by Mothership as a result of Ms. Worline's sales efforts and lead generation.

55.     Between May and June 2024, Ms. Worline's efforts resulted in Mothership winning the business of several clients, resulting in hundreds of thousands of dollars in revenue. Ms. Worline was not paid any commissions, which remain due and owing.

56.     As a direct and proximate result of Mothership's refusal to pay Ms. Worline her wages, Ms. Worline has suffered damages.

WHEREFORE, Plaintiff respectfully seeks the following relief against Mothership:

a.  Damages in an amount to be determined for all unpaid wages and commissions, less any amount shown as actually paid;

b.  Liquidated damages pursuant to Fla. Stat. § 448.110(6)(c)(1);

c.  Plaintiff's reasonable attorneys' fees and costs and expenses of this litigation;

d.  Interest on the amount found due;

e.  Such other relief as this Court shall deem just and proper.

**COUNT IV – BREACH OF CONTRACT**
**(AS TO MOTHERSHIP)**

57.     Plaintiff repeats and realleges the allegations in paragraphs 1 through 36, as if fully set forth herein.

58. Plaintiff incurred expenses on behalf of and for the benefit of Mothership in reliance of Mothership's statements that she would be reimbursed.

59. Plaintiff submitted expense reimbursement requests to Mothership, including invoices and receipts for the expenses incurred, and her expense reimbursement requests were approved by Mothership.

60. Plaintiff incurred $679.10 in unpaid expenses on behalf of and for the benefit of Mothership.

61. An enforceable contract exists for the reimbursement of $679.10 in unpaid expenses.

62. Mothership breached the contract by failing to reimburse Ms. Worline.

63. Mothership's breach of contract has caused Plaintiff damages in the amount of $679.10, representing the amount she is owed for approved expense reimbursements.

WHEREFORE, Plaintiff respectfully seeks the following relief against Defendants:

a. Compensatory damages in an amount to be determined for all unpaid expense reimbursements;

b. Interest on the amount found due; and

c. Such other relief as this Court shall deem just and proper.

## COUNT V - UNJUST ENRICHMENT
### (AS TO MOTHERSHIP)

64. Plaintiff repeats and realleges the allegations in paragraphs 1 through 36, as if fully set forth herein.

65. This count is plead in addition to, and/ or in the alternative to, Count IV.

66. Plaintiff conferred a benefit on Mothership by incurring expenses on behalf of and for the benefit of Mothership with the expectation that she would be reimbursed.

67. Mothership has knowledge of, and voluntarily accepted and retained, the benefits conferred by Plaintiff.

68. The circumstances are such that it would be inequitable for Mothership to retain the benefit without paying the value thereof to the Plaintiff.

WHEREFORE, Plaintiff respectfully seeks the following relief against Defendants:

a. Compensatory damages in an amount to be determined for all unpaid expense reimbursements;

b. Interest on the amount found due; and

c. Such other relief as this Court shall deem just and proper.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury on all claims properly triable by a jury.

Dated: January 10, 2025.

Respectfully submitted,
/s/ *David Yaffe*
David J. Yaffe, Esq.
Florida Bar No.: 125488
david@lawbyyaffe.com
**Yaffe Law**
1135 Kane Concourse, 3rd Floor
Bay Harbor Islands, FL 33154
Telephone: (305) 699-2315
www.lawbyyaffe.com
**Attorney for Plaintiff Ashley Worline**